Kathy WHITE, Plaintiff,

v.

UNITED VAN LINES, INC., Defendant.

No. 90 C 3100.

United States District Court,
N.D. Illinois, E.D.

Feb. 21, 1991.

Bryan David Schultz Law Offices, Chicago, Ill., for plaintiff.

Thomas F. Ging, Daniel K. Ryan, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

This case, arising under the Interstate Commerce Act, comes before us on defendant's motion for summary judgment. For the reasons stated below, we grant defendant's motion.

### FACTS [1]

In December 1984, plaintiff Kathy White ("White") hired United Van Lines ("United") to pack, store and transport her household goods from San Francisco to Chicago. At that time, White purchased United's "Gold Umbrella Full Value Protection" package, which limited United's liability on the shipment to $50,000.00. The "Gold Umbrella" contract incorporated all of the terms of the bill of lading. White signed the bill of lading on April 18, 1985, "subject to inspection," when United delivered her goods to Chicago.

When her goods arrived in Chicago, White discovered that several items were damaged. On September 4, 1985, White filed a claim with United. Memorandum in Opposition to Motion for Summary Judgment and/or Dismissal ("Plaintiff's Memo"), Exhibit D. White and United communicated frequently over the next year, and United made two settlement offers, both of which White rejected. Finally, on October 27, 1986, United sent a detailed listing of its disposition of White's claims and offered $2,574 in allowances "in full and final settlement" of White's claim. Memorandum in Support of Motion for Summary Judgment and/or Dismissal ("Defendant's Memo"), Exhibit D.

On January 27, 1987, United wrote White seeking a response to the October letter. About seven months later, on August 17, 1987, White's brother, lawyer William White ("Mr. White"), sent United a letter discussing liability under the "Gold Umbrella" policy. United responded on August 31, 1987, and included inventories to show White's goods had pre-existing damage. United's August 31 letter further stressed that the "Gold Umbrella–Full Value Protection" coverage did not apply while White's goods were in storage. On December 3, 1987, United claims to have sent Mr. White a letter requesting his acknowledgement of the earlier letter and expressing United's desire to resolve the claim under the terms of the October 1986 settlement offer. Mr. White states that he never received this letter. Plaintiff's Memo, Exhibit C. Nonetheless, more than two years passed without any further communication between White and United.

On January 5, 1990, White's present counsel wrote United and requested that United prepare an additional inventory to aid "further evaluation" of White's claim. On January 10, United responded, noting that the claim was untimely since more than three years had passed since the final settlement offer of October 27, 1986.

---

1. Except where indicated, we take these facts from the parties' statements of uncontested facts, pursuant to Local Rules 12(m) and (n) (formerly Local Rules 12(*l*) and (m)).

However, United stated that its final offer was still open. Plaintiff's Memo, Exhibit L.

White filed this action on May 31, 1990. In Count I of the complaint, she alleges that United violated the terms of the bill of lading by refusing to pay her stated damages. In Count II, she alleges that United's "fraudulent, oppressive and ... reckless" conduct in denying White's claim violated the terms of the "Gold Umbrella" liability package. United now moves for summary judgment on both counts, or dismissal of Count II pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

■ Summary judgment is appropriate if there exists no genuine issue of material fact and the movant is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). In determining a motion for summary judgment, we must view all inferences in the light most favorable to the non-moving party. *Regner v. City of Chicago*, 789 F.2d 534, 536 (7th Cir.1986).

■ The parties agree as to the basic course and timing of events. White argues that she cannot be bound by the limitations provision because she had no actual knowledge of the provision when the contract was formed. However, it is well established that a shipper is chargeable with knowledge of a carrier's tariff provisions that are properly filed with the Interstate Commerce Commission ("ICC"). As our court of appeals has observed, "In accordance with ... the stringent language of the

[Motor Carrier Act, 49 U.S.C. § 317] it has long been held that properly published tariffs are incorporated into any agreement between the shipper and carrier.... '[The shipper], as well as the carrier, must be presumed to know the law....'" *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619, 621 (7th Cir.1979) (citations omitted) (*quoting Pittsburgh, Cincinnati, Chicago & St. Louis R.R. Co. v. Fink*, 250 U.S. 577, 581, 40 S.Ct. 27, 27, 63 L.Ed. 1151 (1919)).

The Carmack Amendment (codified at 49 U.S.C. § 11707) states that a carrier may not establish a limitations period of less than two years for civil actions. Here, United's bill of lading contained a limitations period of two years and one day from the date of written disallowance.[2] Under the statute, "the period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice." 49 U.S.C. § 11707(e).

■ We must determine whether United's written notice of disallowance of October 27, 1986, was sufficient to trigger the limitations period in the bill of lading and render this suit untimely. It is well established that a bill of lading's limitations period is triggered when the carrier's notice of disallowance is clear, final and unequivocal. *John Morrell & Co. v. Chicago, Rock Island & Pacific R.R. Co.*, 495 F.2d 331, 333 (7th Cir.1974). In considering whether the letter of disallowance is clear, final and unequivocal, this circuit asks "whether the notice made it clear that the claim as submitted would not be honored." *Id.*

The October 27 letter clearly conveyed United's denial of portions of White's claim. The letter lists approximately seventy-five items and follows each with the statement "as claimed" and the dollar amount allowed or "disallowed" and the

---

2. The bill of lading White signed contained the following limitations provision, which was derived from Section 6 of the Uniform Household Goods Bill of Lading:

"suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid." Defendant's Memo, Exhibit A.

reasons for disallowance. After enumerating the items, the letter then states: "The above allowances total $2,574.00 which we are offering in *full and final settlement* of your claim." Defendant's Memo, Exhibit D (emphasis added).

■ White argues that the October 27 letter is not "final" because the letter concludes with language that indicates it was an offer: "I look forward to hearing further from you after you have had an opportunity to review this offer." White misunderstands the nature of the disallowance and limitations period. Once the carrier indicates the shipper's claim will not be allowed as submitted, subsequent negotiations between the parties will not toll the limitations period. As one court observed, "the purpose for a formal denial of claim is to start the statute of limitations machinery ... rather than the discouragement of meaningful negotiations between the parties." *B.F. Goodrich Tire Co. v. Louisville & Nashville R.R. Co.*, 439 F.Supp. 363, 365 (S.D.N.Y.1977). *See also Star–Kist Foods v. Chicago, Rock Island and Pac. R.R.*, 586 F.Supp. 252, 255 (N.D.Ill. 1984) (written inquiries following a disallowance did not vitiate the unequivocal nature of the disallowance). In *Star–Kist,* the court stressed that neither the carrier's disallowal nor subsequent correspondence suggested partial liability, and observed that the carrier later reiterated its denial of the shipper's claim. *Id.* at 256. Similarly, none of United's correspondence after October 27, 1986, indicates that it ever wavered from its denial of liability, and subsequent letters repeatedly refer back to the "October 27, 1986" settlement offer. We conclude that the limitations period commenced with the October 27, 1986, letter and expired on October 28, 1988—two years and one day after the final notice of disallowal. Count I of plaintiff's complaint is barred because it was filed on May 31, 1990—more than a year and a half after the limitations period expired.[3]

■ In Count II, White purports to allege a state common law claim for bad faith breach of an "insurance contract"— here, the "Gold Umbrella" liability package.[4] Defendant argues that Count II is preempted by the Carmack Amendment.

■ We agree that the Carmack Amendment preempts state law remedies for damages to goods. As the Supreme Court observed, "Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–6, 33 S.Ct. 148, 152, 57 L.Ed. 314 (1913), quoted in *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1413 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

Plaintiff responds that the statute preempts only actions involving damage to the goods themselves, and reasons that Count II addresses defendant's conduct in processing White's claim. Plaintiff argues that "Congress intended that a carrier's ancillary conduct in connection with the manner in which it treats those claims is to be left to existing state or common law remedies." Plaintiff's Memo at 13. We disagree. Under similar circumstances, our appellate court held that the Carmack Amendment preempted plaintiffs' state and common law theories of recovery. *Hughes*, 829 F.2d at 1415. The *Hughes* plaintiffs' common law claims were based on the same "Gold Umbrella Protection–Full Value Guarantee" liability package White purchased, and included similar allegations of negligence, breach of insurance contract, intentional and negligent misrepresenta-

---

**3.** Plaintiff argues that defendant violated its own tariff provisions because it initially responded to her claim 60 days after the maximum time allotted by the tariff. However, plaintiff fails to demonstrate how this impacts upon the limitations provision. Plaintiff's suit is untimely even if we commensurately extend the limitations period sixty days for her benefit.

**4.** Plaintiff mischaracterizes the "Gold Umbrella" certificate as an "insurance policy." The certificate is simply a modification of the carrier's standard liability limits under the bill of lading. The "Gold Umbrella" plan permits the shipper to purchase a higher liability limit based on the shipper's valuation of the shipment.

tion, and negligent infliction of emotional distress. *Id.* at 1412. We agree with defendant that the Carmack Amendment preempts Count II of plaintiff's complaint, and the limitations period discussed above similarly bars Count II.

CONCLUSION

We grant defendant's motion for summary judgment and accordingly deny plaintiff's cross-motion for Rule 11 sanctions.