Michael ARNELL and Patricia Arnell, Plaintiffs,

v.

MAYFLOWER TRANSIT, INC., an Indiana corporation, and Lawrence Moving and Storage Co., a Nevada corporation, and Does I through V, and Roe Corporations VI through X, inclusive, Defendants.

No. CV–S–96–0916–PMP (LRL).

United States District Court, D. Nevada.

June 20, 1997.

Thomas W. Davis, II, Jimmerson, Davis & Hansen, Las Vegas, NV, for Plaintiffs.

James R. Cavilia, Allison, MacKenzie, Hartman, Soubeniotis & Russell, Carson City, NV, for Defendants.

PRO, District Judge.

## ORDER

Presently before the Court is Defendants Mayflower Transit, Inc., ("Mayflower") and Lawrence Moving and Storage, Co.'s, ("Lawrence") Motion to Dismiss and for Summary Judgment (# 19) filed on March 20, 1997. Plaintiffs Michael and Patricia Arnell ("the Arnells") filed an Opposition (# 25) on May 5, 1997. On May 19, 1997, the Defendants filed a Reply (# 26).

## I. Factual Background

Mayflower and the Arnells entered into an agreement to ship the Arnells' household goods and personal items from Florida to Las Vegas. The Arnells signed Mayflower's Estimate/Order for Service and Combination Service Agreement and Bill of Lading. On both of these contractual agreements, the Arnells requested a valuation protection of $.60 per pound per article. On the Estimate/Order for Service, the box "Carrier's Legal Liability" is marked and the amount of 60 cents per pound is handwritten next to the signature of Patricia Arnell. (Def.'s Mtn. to Dismiss Ex. B).

The Arnells contend that upon arrival in Las Vegas, Mayflower did not properly deliver their possessions, and that they were required to make several attempts to discover where their property was located. They contend that Mayflower delivered their goods to a third party, Southern Nevada Storage. When the Arnells attempted to obtain their goods from Southern Nevada Storage, it would not release the Arnells' possessions until the Arnells paid $3,069.09 in storage costs.

In addition to general damage to their property, the Arnells claim that Mayflower employees stole $1,200.00 from the Arnells' slot machine. The Arnells also contend that Mayflower negligently delayed replying to their claim for damages pursuant to the Bill of Lading. Furthermore, when the Arnells refused to pay their bill due to Mayflower's negligence, Mayflower submitted their bill to a company for collection, impairing their credit rating. In response to these events, the Arnells filed suit against Mayflower and Lawrence Moving and Storage Company for Breach of Contract, Conversion and Negligence on August 27, 1996.

## II. Discussion

### A. Standard for a Motion to Dismiss

In considering Defendants' Motion to Dismiss, the factual allegations of the Arnells' Complaint must be presumed to be true, and this Court must draw all reasonable inferences in their favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether the Arnells will ultimately prevail, but whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaint. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991)). Such consideration does "not convert the motion to dismiss into a motion for summary judgment." *Id.* While the legal effect of the

documents referred to in the Defendants' Motion to Dismiss is contested, the authenticity of those documents is not. Therefore, the Defendants' Motion to Dismiss will not be converted into a Motion for Summary Judgment by this Court.[1]

### B. The Arnells' Amended Complaint

■ Mayflower contends that the Arnells' Amended Complaint (# 17) does not comply with this Court's Order (# 9) of December 2, 1996. In that Order, this Court granted the Plaintiffs' request to amend their complaint consistent with section II B of Plaintiffs' Opposition (# 7) to Defendants' Motion to Dismiss dated November 4, 1996 (# 6). Section II B contained a request to "specifically allege additional aspects of Defendants' liability." (Plaintiffs' Oppo. # 7 p. 7). The Arnells requested permission to include causes of action for 1) breach of the implied covenant of good faith and fair dealing; 2) deceptive acts or practices in moving Plaintiffs' goods; 3) fraudulent inducement and 4) violations of the Carmack Amendment, 49 U.S.C. § 11706.

The Arnells amended their complaint to include a violation of the Carmack Amendment, fraud and breach of the implied covenant of good faith and fair dealing. Mayflower contends that this amendment improperly expanded the complaint, as this Court's Order (# 9) allowed the Arnells to allege only the causes of action listed in section II B. This argument is incorrect. This Court's Order allowed the Arnells to *include* these claims, it did not state that only these claims would be allowed. Section II B of Plaintiffs' Opposition (# 7) explicitly stated that they wished to allege additional claims. For these reasons, the Amended Complaint is permissible, as it does not exceed the scope of this Court's Order (# 9).

### C. Carmack Amendment Preemption

■ There is extensive case law holding that the Carmack Amendment preempts state law causes of action for loss or injury to property transported interstate by common carriers. The Supreme Court has interpreted the Carmack Amendment broadly, as superseding all state regulation regarding interstate common carrier liability. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06, 33 S.Ct. 148, 151–52, 57 L.Ed. 314 (1913). The vast majority of lower court cases hold that the Carmack Amendment preempts all such liability claims under state law. *Pietro Culotta Grapes Ltd., v. Southern Pac. Transp. Co.*, 917 F.Supp. 713, 716 (E.D.Ca. 1996).

The Arnells argue that their claims for breach of the covenant of Good Faith and Fair Dealing and Conversion are not preempted, and that their state law claims arise out of conduct separate from the actual shipment of their possessions, and are therefore not preempted by the Carmack Amendment. However, the Arnells admit that the vast majority of case law holds that similar state claims are preempted by the Carmack Amendment. *See, e.g., Pietro*, 917 F.Supp. 713 (claims based on conduct prior to or after shipment are preempted by the Carmack Amendment); *Glickfeld v. Howard Van Lines, Inc., et. al.*, 213 F.2d 723 (9th Cir. 1954) (a carrier may limit its liability even when conversion is by third parties or employees); and *Underwriters at Lloyds of London v. North Am. Van Lines*, 890 F.2d 1112 (10th Cir.1989) (the Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading).

■ The Arnells have offered no persuasive authority or analysis in light of this case law to support their claims.[2] In fact, virtually every case addressing the issue has held

---

1. The Defendants' filed a Motion to Dismiss as to liability under state law, and a Motion for Summary Judgment limiting the amount of damages under federal law. This Court will address these issues separately, under the legal standards applicable to each motion.

2. The Arnells admit that the cases they cite in support of their claims, *Sokhos v. Mayflower*

*Transit, Inc.*, 691 F.Supp. 1578 (D.Mass.1988), and *Mesta v. Allied Van Lines Int'l. Inc.*, 695 F.Supp. 63 (D.Mass.1988), state the minority rule. Furthermore, the 10th Circuit overruled the premise of those cases in *Underwriters at Lloyds of London*. *See*, 890 F.2d at 1121.

that anything other than complete preemption of state law claims is contrary to the very purpose of the Carmack Amendment, which was to establish uniform national rules of liability for interstate carriers.[3] In light of the weight of authority consistent with the intent behind the Carmack Amendment, this Court finds that the Arnells' state law claims are preempted, and grants Defendant's Motion to Dismiss.

### D. Mayflower's Limitation of Liability

 The Carmack Amendment subjects common carriers to liability, but allows carriers to limit this liability through a Bill of Lading. Mayflower argues that Summary Judgment is proper limiting its liability to $.60 per pound per item, as stated in the bill of lading. A carrier may limit its liability under the Carmack Amendment to a value established by written agreement, if the value is reasonable given the circumstances surrounding the transportation. 49 U.S.C. § 11706(c)(3). However, before a carrier's limitation of liability will become effective, the carrier must:

> (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement.

*Hughes Aircraft Co. v. North Am. Van Lines*, 970 F.2d 609, 611–12 (1992). In support of its Motion to limit the Arnells' recovery, Mayflower merely provides the Estimate/Order for Service and the Service Agreement and Bill of Lading, which limits Mayflower's liability to $.60 per pound per article. Mayflower does not argue or offer any facts as to whether the Arnells had a reasonable opportunity to choose between two or more levels of liability. A shipper must have both reasonable notice of the liability limitation and the opportunity to obtain the necessary information in order to make a deliberate, well-informed choice. *Hughes*, 970 F.2d at 612. As no factual showing has been made in this regard, a material issue of fact exists, and summary judgment is inappropriate on this issue.

IT IS THEREFORE ORDERED THAT Defendants' Motion to Dismiss or in the alternative for Summary Judgement is GRANTED to the extent that Plaintiffs' claims for Breach of Contract, Conversion, Negligence, Fraud and Breach of the Implied Covenant of Good Faith and Fair Dealing are DISMISSED.

IT IS FURTHER ORDERED THAT Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs' Carmack Amendment claim and the amount of damages recoverable under that claim.

---

3. In *Drucker v. O'Brien's Moving and Storage Inc.*, 745 F.Supp. 616 (D.Nev.1990), the court found that the "great weight of authority, perhaps unanimous authority, is to the effect that in these circumstances the plaintiffs are limited to the damages they an recover under the bill of lading." *Id.* at 618. However, the court found that a claim for breach of the duty of good faith and fair dealing could co-exist with a Carmack Amendment claim. This Court disagrees with the *Drucker* court in this regard, and here holds that state law claims relating to the interstate shipment of goods by a common carrier are preempted by the Carmack Amendment.