John NICHOLS and Pamela Nichols, as individuals and as husband and wife; and State Farm Fire & Casualty Co., an Illinois corporation, Plaintiffs,

v.

MAYFLOWER TRANSIT, LLC, a Missouri Limited Liability Company; and National Transfer and Storage, Inc., a California corporation, doing business as Olsen and Fielding Moving Services, and Does 1 through 10, individuals, partnerships, corporations, or other business companies, Defendants.

No. CVS030273JCM(RJJ).

United States District Court, D. Nevada.

June 19, 2003.

Nik Walters, Nik V. Walters, Reno, NV, for Plaintiff.

Rew R. Goodenow, Marshall Hill Cassas & de Lipkau, Reno, NV, Jeffrey R. Simmons, DeConcini McDonald Yetwin & Lacy, P.C., Phoenix, AZ, for Defendant.

*ORDER GRANTING DEFENDANTS' MOTION TO DISMISS*

HAGEN, District Judge.

## I. INTRODUCTION

Before the Court is the February 14, 2003 Motion to Dismiss, filed by Defendants Mayflower Transit, L.L.C. ("Mayflower") and National Transfer and Storage Company, Inc., doing business as Olsen & Fielding Moving Services' ("Olsen & Fielding"). The Court has considered the Motion, Plaintiffs' Opposition thereto, Defendants' Reply and oral argument by the parties and finds that the Carmack Amendment, 49 U.S.C. § 14706, preempts all of the state law causes of action alleged in Plaintiffs' First Amended Complaint. Further, the Court finds that Olsen & Fielding is not a proper party Defendant because Olsen & Fielding, as a disclosed household goods agent of Mayflower, has no liability to Plaintiffs under the Carmack Amendment. Therefore, the Court grants Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND

Pursuant to the authority of the Surface Transportation Board and the ICC Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 13101 et seq., Mayflower is a motor carrier of household goods. This case arises from Mayflower's interstate shipment of

Plaintiffs John and Pamela Nichols' ("Nichols") household goods, pursuant to Mayflower's Uniform Household Goods Bill of Lading and Freight Bill. On July 20, 2001, Mayflower picked up the Nichols' household goods at their home in Sacramento, California for interstate transport to Henderson, Nevada. On July 24, 2001, Mayflower notified Nichols that a trailer fire in Nevada that same day destroyed their household goods.

Defendant Olsen & Fielding acted as Mayflower's disclosed household goods agent for the interstate move. Plaintiff State Farm Fire and Casualty Company ("State Farm") is Nichols' insurer and is subrogated to Nichols' rights against the Defendants.

Mayflower's Motion seeks dismissal of the following state law claims alleged in the Complaint: breach of contract, negligence, negligence per se, negligent misrepresentation, intentional misrepresentation, breach of duty to deal fairly and in good faith, violation of the California Insurance Code, violation of Nevada's Unfair Claims and Practices Act, promissory estoppel, attorneys' fees and punitive damages.

### III. *STANDARD OF REVIEW*

In reviewing a Rule 12(b)(6) motion, the Court must accept as true all material allegations in the complaint, as well as all inferences reasonably drawn from those allegations. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiff's Complaint." *Arnell v. Mayflower Transit, Inc.*, 968 F.Supp. 521, 522 (D.Nev.1997).

Therefore, the issue before this Court in deciding Defendants' Motion to Dismiss is whether "it appears beyond doubt" that the Carmack Amendment entitles Defendants to a dismissal of Plaintiffs' state law claims and dismissal of Defendant Olsen & Fielding as an improper defendant as a matter of law.

### IV. *DISCUSSION*

#### A. Carmack Preemption.

Congress enacted the Carmack Amendment to the Interstate Commerce Act ("ICA") in 1906, to establish uniformity and consistency among states in the application and resolution of interstate shipping loss and damage cases. The Carmack Amendment defined the parameters of carrier liability for loss or damage to goods transported under interstate bills of lading and codified the terms and obligations in the carrier-shipper relationship. The Amendment, now set forth at 49 U.S.C. § 14706, states in relevant part:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. *The liability imposed under this paragraph is for the actual loss or injury to the property* ....

(Emphasis added).

Within a few years of the Carmack Amendment's passage, the United States Supreme Court in *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), defined Carmack preemption in the broadest terms:

> Almost every detail of the subject [interstate common carriers] is covered so completely that there can be no rational

doubt but that Congress intended to take possession of the subject, and supersede all state regulations with reference to it. . . . *Id.* at 505–06, 33 S.Ct. 148.

*Adams Express* held that the Carmack Amendment governs all claims arising out of loss or damage to property transported in interstate commerce and preempts all state law claims. The Court explained the statute's primary objective: the establishment of a uniform national policy governing liability of interstate carriers. *Id.* at 505, 33 S.Ct. 148.

Following *Adams Express,* Circuit Courts of Appeals, including the Ninth Circuit, have unanimously held that Carmack's broad scope preempts all state law claims. *See, e.g., Hughes Aircraft v. North American Van Lines,* 970 F.2d 609, 613 (9th Cir.1992) ("Hughes [the shipper] wisely concede[d] that federal law preempts any state common law action against . . . a common carrier."). *See also* George W. Wright, *Slouching Toward a Morass: The Case for Preserving Complete Carmack Preemption,* 1 DePaul Bus. & Comm. L.J. 177 (2003) (discussing the judicial evolution of Carmack preemption and opining that no reasons exist for Congress to change Carmack because it has met the need for stable interstate carrier rates and a national uniform standard of liability that covers the entire contractual relationship between the shipper and carrier).

Without question, the District Court of Nevada agrees. In *Arnell v. Mayflower Transit, Inc.,* 968 F.Supp. 521, 523–24 (D.Nev.1997), this Court granted a defendant carrier's motion to dismiss the plaintiff's state law claims and held that "virtually every case addressing the issue has held that anything other than complete preemption of state law claims is contrary to the very purpose of the Carmack Amendment, which was to establish uniform rules of liability for interstate carriers." Thus, under Carmack, a shipper's sole remedy is limited to "actual loss or injury to the property" transported. 49 U.S.C. § 14706.

**B. Carmack Preemption of State Insurance Law Claims.**

In their Opposition, Plaintiffs concede that Carmack preempts certain of their claims, including breach of contract, negligence, negligence per se, negligent misrepresentation, intentional misrepresentation, and breach of duty to deal fairly in good faith. Nevertheless, in an attempt to avoid Carmack preemption, Plaintiffs argue that Carmack does not preempt their remaining claims, what Plaintiffs characterize as "state insurance claims." Specifically, Plaintiffs argue that Defendants sold "insurance" and acted in bad faith when refusing to pay their claim. The Court disagrees with Plaintiffs' analysis.

Plaintiffs allege that the Nichols released their shipment for the "declared value" of $76,000, in exchange for a $320.00 tariff transportation charge. This "declared value" is not an insurance agreement, nor is it anything analogous to one. Indeed, an interstate common carrier's liability is *not* that of an insurer. *Missouri Pacific Railroad Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *Ensco, Inc. v. Weicker Transfer and Storage Co.,* 689 F.2d 921, 925 (10th Cir.1982); *Martin Imports v. Courier-Newsom Exp., Inc.,* 580 F.2d 240, 242 (7th Cir.1978).

Pursuant to 49 U.S.C. § 14706(c)(1)(A) (commercial shipments) and (f) (household goods shipments), carriers may establish rates for the transportation of property and limit their liability to the shipper's declared value. Such limitations are referred to as "released values." *See First Natl. Bank & Trust Co. of Newtown v.*

*Consolidated Freightways,* 797 F.Supp. 1262, 1269 n. 3 (E.D.Pa.1992). This is precisely what occurred here. The parties established Plaintiffs' "released value" as authorized by 49 U.S.C. § 14706, *not* by a state law insurance contract.

In *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407 (7th Cir.1987) *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988) and *White v. United Van Lines, Inc.,* 758 F.Supp. 1240 (N.D.Ill.1991), the courts dealt with similar released valuation agreements and dismissed plaintiffs' causes of action asserted against the household goods carrier for breach of insurance agreement. The District Court in *White* held that the Carmack Amendment preempted the plaintiff's state common law claim against the carrier for bad faith breach of "insurance contract." The *White* court stated:

> Plaintiff mischaracterizes the "Gold Umbrella" certificate as an "insurance policy." The certificate is simply a modification of the carrier's standard liability limits under the bill of lading. The "Gold Umbrella" plan permits the shipper to purchase a higher liability limit based on the shipper's valuation of the shipment.

758 F.Supp. at 1243 n. 4.

Following the mandate of the *Hughes* and *White* cases, the District Court in *Prince v. United Van Lines, Inc.,* 1997 WL 53121 at *3 (N.D.Tex.1997) further held that "the contractual limit of liability provided by United is a creature of the Carmack Amendment itself and therefore it cannot be, and never has been, considered insurance by the federal courts such that the preemptive effects of the Amendment would give way to state insurance regulations."

The Plaintiffs' position here ignores the litany of federal cases holding that Carmack preempts all claims for alleged violations of state insurance codes and/or breach of insurance contracts, including *Hughes,* 829 F.2d at 1412 n. 5 (7th Cir. 1987) (cause of action for breach of insurance contract preempted by Carmack); *Hanlon v. United Parcel Service,* 132 F.Supp.2d 503 (N.D.Tex.2001) (Carmack preempted plaintiff's claim for alleged deceit for fraudulent insurance fee collection, unauthorized operation as an insurance company, and violations of the Texas Insurance Code (Unfair Claim Settlement Practices Act)); *Prince v. United Van Lines, Inc.,* 1997 WL 53121 (N.D.Tex.1997) (Carmack preempts state law causes of action pursuant to the Texas Insurance Code); and *Simmons v. United Parcel Service,* 924 F.Supp. 65, 67 (W.D.Tex.1996) (Carmack preempts plaintiff's state law claims for violation of state insurance code).

Plaintiffs' theory of potential liability under state insurance law, not only defies Carmack's uniform application requirements, but would make every plaintiff's cause of action different and dependent on which states were involved in the move. The right to assert additional causes of action, such as Plaintiffs' "state insurance claims," would fortuitously depend on which states were involved in the move. As this Court has already recognized in *Arnell,* 968 F.Supp. at 524, "anything other than complete preemption of state law claims is contrary to the very purpose of the Carmack Amendment, which was to establish uniform national rules of liability for interstate carriers."

In light of the great weight of authority consistent with Congressional intent, the Carmack Amendment preempts Plaintiffs "state insurance law claims," including Plaintiffs' claim for punitive damages as well. *American Eye Way, Inc. v. Roadway Package System, Inc.,* 875 F.Supp. 820, 821 (S.D.Fla.1995) (dismissing claim for punitive damages as moot after dis-

missing state law claims). *See also Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 287 (7th Cir.1997) (no federal common law right to punitive damages exists in Carmack Amendment suit); *Cleveland v. Beltman North American Van Lines Co., Inc.*, 30 F.3d 373, 379 (2nd Cir.1994) (punitive damages not available under federal common law because it would frustrate the uniformity goal of the Carmack Amendment); *The Limited, Inc. v. PDQ Transit, Inc.*, 160 F.Supp.2d 842, 845 (S.D.Ohio 2001) ("Punitive damages are inconsistent with the Carmack Amendment").

## C. Attorneys' Fees.

Plaintiffs' state or common law based attorneys' fees claim also is preempted. *See, e.g., Accura Systems, Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874 (5th Cir. 1996). Moreover, Plaintiffs are not entitled to attorneys' fees under Carmack either.

█ A shipper can recover attorneys' fees in a Carmack claim involving household goods only in certain limited circumstances. *See* 49 U.S.C. § 14708. For example, a shipper can collect attorneys' fees if (1) the claim is for lost or damaged household goods, (2) the shipment is C.O.D., and (3) the shipper (like Plaintiffs, in this instance) submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later. *Id.* at (d)(1).

Here, Plaintiffs missed the 120 day deadline and therefore do not have a claim for attorneys' fees under Carmack as a matter of law. Plaintiffs admit they did not submit their claim to the carrier within 120 days of the scheduled delivery date. On July 24, 2001, Mayflower notified Plaintiffs that a trailer fire destroyed their goods that same day. *See* Pls.' First Am. Compl. at ¶¶ 9, 10. Therefore, the 120 day requirement set forth in 49 U.S.C. § 14708 expired on November 24, 2001. Plaintiffs' First Amended Complaint (at ¶ 13) admits that Plaintiffs first provided Defendants with written notification of their claims (the sufficiency of which Defendants dispute) on or about December 19, 2001, April 23, 2002, and September 4, 2002. Thus, none of Plaintiffs' alleged notices met the 120 day requirement and are precluded under 49 U.S.C. § 14708(d)(1) for that reason.

## D. Defendant Olsen & Fielding.

█ 49 U.S.C. § 13907 provides that:

Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

*See also O'Donnell v. Earle W. Noyes & Sons*, 98 F.Supp.2d 60, 63 (D.Me.2000); *Werner v. Lawrence Transp. Sys., Inc.*, 52 F.Supp.2d 567, 568–69 (E.D.N.C.1998) ("Not only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract."); *Fox v. Kachina Moving & Storage*, 1998 WL 760268 at *1 (N.D.Tex. 1998). The Court, therefore, finds that Defendant Olsen & Fielding should be dismissed from this case.

## E. Prima Facie Carmack Claim.

█ A plaintiff must allege three elements to establish a prima facie case of violation of the Carmack Amendment: (1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods

before delivery to their final destination, or failure to deliver altogether, and (3) the amount of damages. *See Beta Spawn, Inc. v. FFE Transportation Services, Inc.*, 250 F.3d 218, 223 (3rd Cir.2001).

While Plaintiffs make no mention of the Carmack Amendment in their Amended Complaint, the Court finds that Plaintiffs' Amended Complaint does allege these three elements, in that it states: (1) "The Nichols delivered household goods in good condition to the Defendants in Sacramento, California, to be moved to Henderson, Nevada" (Pls.' Am. Compl. at ¶ 7); (2) "[T]he Defendants notified the Nichols that all of their household goods were completely destroyed in a trailer fire on July 24, 2001 in Nevada" (Pls.' Am. Compl. at ¶ 9); and (3) "Plaintiffs incurred damages in an amount in excess of $40,000" (Pls.' Am. Comp. at ¶ 18). Thus, Plaintiffs' First Amended Complaint states a cause of action under the Carmack Amendment.

## V. CONCLUSION

A motion to dismiss is proper if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Arnell*, 968 F.Supp. at 522 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, with Carmack's complete preemption of all state law claims arising from or related to an interstate move, "it appears beyond doubt" that Defendants are entitled to dismissal of all of Plaintiffs' state law claims as a matter of law. In addition, Olsen & Fielding is not a proper party Defendant in this action because Olsen & Fielding has no liability to Plaintiffs under Carmack, separate and independent from that of Defendant Mayflower.

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that (1) Defendants' Motion to Dismiss is GRANTED and Plaintiffs' claims for breach of contract, negligence, negligence per se, negligent misrepresentation, intentional misrepresentation, breach of duty to deal fairly and in good faith, violations of the California Insurance Code and Nevada's Unfair Claims Practices Act, punitive damages, promissory estoppel and attorney's fees are DISMISSED; (2) paragraph 17 of Plaintiffs' First Amended Complaint, alleging Plaintiffs' state law causes of action and claims, is STRICKEN; and (3) Defendant Olsen & Fielding is DISMISSED from the case.

IT IS SO ORDERED.