**WORLD–WIDE RIGHTS LIMITED PARTNERSHIP, Plaintiff–Appellant,**

v.

**COMBE INCORPORATED; Combe Puerto Rico, Incorporated, a Delaware corporation, Defendants–Appellees.**

No. 91–1050.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1991.

Decided Jan. 29, 1992.

Lawrence Stephen Greenwald, Gordon, Feinblatt Rothman, Hoffberger & Hollander, Baltimore, Md., argued (Jeffrey Schwaber, on brief), for plaintiff-appellant.

Charles Joseph Yast, Jr., Lord, Bissell & Brook, Chicago, Ill., argued (R.R. McMahan, Chicago, Ill., Robert B. Green, Irwin, Kerr, Green, McDonald & Dexter, Baltimore, Md., on brief), for defendants-appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and PHILLIPS and NIEMEYER, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

World–Wide Rights Limited Partnership (World) brought a declaratory judgment action in diversity, seeking to establish its right to royalty payments under a 1961 licensing agreement (the Agreement) with Combe Incorporated (Combe). On the parties' cross-motions for summary judgment, the district court concluded as a matter of law that the critical language of the Agreement was unambiguous and did not require Combe to pay royalties to World. On that basis the court granted summary judgment to Combe. Because we conclude that the critical language of the Agreement is ambiguous, making judgment for either party as a matter of law on the summary judgment record improper, we vacate the judgment and remand for further proceedings.

## I

World developed a chemical process and formula for a product that turned gray hair to a natural-looking color. The product was marketed under its trademark name, "Grecian Formula 16." Under their Agreement, World granted Combe an exclusive,

long-term license to manufacture, use and sell the Grecian Formula 16 product in the United States and Canada. In exchange, Combe agreed to pay royalties based on a percentage of sales of the product.

The Agreement also granted Combe a limited right to use the Grecian Formula 16 chemical process, the trademark and the trade name for other hair products. If these other products utilized the trade name, but neither employed the chemical process, nor competed with the Grecian Formula 16 product, they were exempted from royalty payments. At issue in this appeal is whether Combe must pay royalties where it sells a product that uses neither the chemical process, nor the trade name, but does compete directly with the Grecian Formula 16 product.

The product for which World demanded royalty payments is Just For Men, which Combe developed and marketed completely independent of the Grecian Formula 16 line of products. In developing Just For Men, Combe neither utilized the Grecian Formula 16 chemical process, nor the Grecian Formula 16 name. As a product meant to change men's hair color from gray to a natural-looking color, Just For Men competes directly with Grecian Formula 16.

World has contended throughout that the Agreement requires Combe to pay royalties on sales of Just For Men, because Just For Men competes with Grecian Formula 16. To support its claim, World has relied on ¶ 3(c)(iv)(B) of the Agreement, which states in its entirety that:

> If Combe develops any new product for the hair using or based upon the active ingredients in the process or which competes with the [Grecian Formula 16] product but which is substantially different, no royalties shall be payable by Combe hereunder on the first $50,000 of net sales of any such other product in any fiscal year, unless the net sales of such other product equal or exceed $100,-000 for any such fiscal year in which case all net sales of such other product in

such fiscal year will be included with the sales of the [Grecian Formula 16] product in computing percentage royalties hereunder.

World's contention has been that by the plain meaning of this provision, Just For Men falls within its scope: it is a hair product that "competes with the Grecian Formula 16 product," but is "substantially different" in that it uses a different chemical process. World claimed that, because Just For Men accounts for net sales that "equal or exceed $100,000" per fiscal year, Combe must pay royalties.

Combe has contended to the contrary that, if ¶ 3(c)(iv)(B) is read in the context of the entire Agreement, it is clear that World may demand royalty payments only for net sales over $100,000 of products that utilize the Grecian Formula 16 trade name. Because Just For Men does not employ the Grecian Formula 16 trade name, Combe has maintained that by terms of the Agreement, it owed no royalties on sales of the product.

As indicated, the district court, considering the matter on the parties' cross-motions for summary judgment,[1] concluded that as a matter of law the Agreement did not require Combe to pay royalties to World, and gave summary judgment accordingly.

This appeal by World followed.

## II

A district court may grant a motion for summary judgment only where it finds "that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Not only must the historic facts be not in genuine issue, so must there be no genuine issue as to the inferences to be drawn from them. Where as here, both parties have moved for summary judgment, it does not "establish that there is no issue of fact and require that summary judgment be granted to one side or another." *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214 (4th Cir.1965).

---

**1.** Combe's motion was actually one for judgment on the pleadings under Rule 12(c); World's, for "partial summary judgment." The district court treated these as effectively cross-motions for summary judgment.

We review the grant of summary judgment *de novo*. *Higgins v. E.I. Du-Pont de Nemours & Co.*, 863 F.2d 1162 (4th Cir.1988).

A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible of two reasonable interpretations." *American Fidelity & Casualty*, 354 F.2d at 216. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis. *See Jaftex Corp. v. Aetna Casualty and Surety Co.*, 617 F.2d 1062, 1063 (4th Cir.1980). If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

In this case, the district court expressly stated that it made its determination based only upon the unambiguous writing contained within the four corners of the Agreement.

In so holding, the court erred.

### III

Although there is no dispute as to the actual words of ¶ 3(c)(iv)(B) of the Agreement, the parties seemingly agree—as we think they must—that the language of that provision standing alone does not yield an unambiguous answer to the dispositive issue. Both concede the need to find unambiguous meaning by reading this provision in context of the entire Agreement, and both contend that unambiguous meaning favorable to their respective positions can be found in such a contextual search.

Taken as a whole, Combe argues, the Agreement determines the parties' rights only as to products and technology that World possessed before entering into the Agreement with Combe. Before the parties entered into the Agreement, World possessed exclusive rights to Grecian Formula 16, but it possessed no rights to Just For Men. Through the Agreement, World granted some of its rights in Grecian Formula 16 to Combe, in consideration of which Combe accepted the affirmative obligation to pay royalties on sales of Grecian Formula 16 products. However, because World never possessed any rights in the product Just For Men, Just For Men fell completely outside the universe of the Agreement, and World may neither claim that it has rights in Just For Men, nor claim that the Agreement creates an affirmative obligation requiring Combe to pay royalties on sales of Just For Men.

Combe further maintains that, because ¶ 3(c)(iv)(B) falls within a section of the Agreement entitled "Royalty Free Sales," and because ¶ 3(c)(iv)(B) is surrounded by other subsections that except Combe from royalty payments, ¶ 3(c)(iv)(B) must be considered an "exceptions clause" of the Agreement. Combe argues that, as a general matter of contract interpretation, an exception exists only to exempt something which otherwise would be covered by the contract at issue. *Florida Gulf Coast Bldg. and Constr. Trades Council v. NLRB*, 796 F.2d 1328, 1341 (11th Cir.1986). In other words, an exceptions clause should not be read to create an affirmative obligation. *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 795 (1979). Here, an unrelated product such as Just For Men uses no licensed property or right belonging to World, and therefore is not "otherwise covered" by the Agreement. Because

¶ 3(c)(iv)(B) is an exceptions clause, and because as such it cannot create an affirmative royalty obligation, the Agreement does not require Combe to pay royalties on sales of Just For Men.

Combe also offers an economic rationale for its interpretation of the disputed language. According to Combe, ¶ 3(c)(iv)(B) was included in the Agreement in order to permit it to develop Grecian Formula products that expanded on the original Grecian Formula 16 technology. For example, a "new and improved" Grecian Formula product that used an advanced technology based on the original technology, would be a product that uses the trademark, competes with Grecian Formula 16, is "substantially different," and therefore would fall within the ambit of ¶ 3(c)(iv)(B).

Although Combe's reading of the disputed language is plausible, there is an equally plausible reading of the full Agreement which supports a different interpretation.

Paragraph 3(c)(iv)(B) of the Agreement requires payment of royalties on net sales of more than $100,000 of any "new products for the hair using or based on the active ingredients in the process or which competes with the [Grecian Formula 16] product but is substantially different." Considered in isolation, the plain language of this passage appears to contemplate that the sale of any competing product in excess of $100,000, will give rise to an obligation to pay royalties, whether or not that product uses the Grecian Formula 16 trademark.

Surrounding provisions of the Agreement support this intuitive reading of the apparent literal import of this provision. Paragraph 3(c)(iv)(C), which directly follows the provision at issue, explicitly exempts from royalty payments those hair products sold by Combe "under the trade name or trade-mark ... provided such other product does not use and is not based upon the active ingredients in the process and does not compete with the product

..." Thus, where the authors of the Agreement intended a provision to distinguish between trademark sales and non-trademark sales, they explicitly so provided. Including mention of the trademark in ¶ 3(c)(iv)(C) but excluding it from the preceding subparagraph, ¶ 3(c)(iv)(B), suggests that it was not intended as an element of the latter. *See Consolidated Gas Supply Corp. v. Federal Energy Regulation Comm'n,* 745 F.2d 281, 290–91 (4th Cir. 1984).

Finally, World's interpretation of the disputed language fits no less harmoniously into the Agreement than does the interpretation offered by Combe. World granted to Combe a long-term exclusive contract to market Grecian Formula 16. It would be natural for World to protect itself in the Agreement against the possibility that Combe would develop its own competing product, such as Just For Men, and market that product to the exclusion of Grecian Formula 16.[2] Excusing Combe from royalty payments for the first $100,000 of sales of a new competing product would permit Combe to develop alternative products, but would require payment of royalties once that new product became successful enough to compete with Grecian Formula 16.

In sum, although ¶ 3(c)(iv)(B) of the Agreement plausibly may be interpreted to mean that World is entitled to royalty payments for sales by Combe of the product Just For Men, it may as plausibly be interpreted to mean that World is not entitled to such royalties. Therefore, the district court was in error in declaring that the critical language of the Agreement was unambiguous as a matter of law, and on that basis awarding summary judgment to Combe.

## IV

For the above reasons, the judgment of the district court must be vacated, and the case remanded for further proceedings.

---

2. World offers no evidence that Combe has in fact promoted Just For Men to the detriment of Grecian Formula 16.

Upon remand, the district court may not, in view of our holding, grant summary judgment for either party on the basis that the contractual language yields an unambiguous meaning on the disputed interpretive issues. It may of course reconsider the cross-motions for summary judgment on the basis of an expanded summary judgment record if persuaded that available extrinsic evidence might permit resolution as a matter of law of the critical ambiguity we find in the Agreement.[3] Failing that, the interpretive issue must of course be resolved by the trier of fact.

VACATED AND REMANDED.

3. Whether there might be such a possibility is unclear to us. At oral argument, in response to questions from the court, counsel intimated that both parties had suggested to the district court the availability of extrinsic evidence not before the court that might support their respective positions if their plain meaning contentions did not succeed. The district court's memorandum opinion states flatly that the parties had had the opportunity to present summary judgment materials. So far as can be told from the appendix materials before us, the only materials before the district court were the pleadings, which included as exhibits the full text of the Agreement and an exchange of two items of correspondence between officials of the parties in which the Agreement's meaning was discussed. It is of course a matter for the district court's discretion whether under the circumstances it would be proper to re-open the summary judgment record, if either party were to request that.