AIDA DAYTON TECHNOLOGIES
CORPORATION, Plaintiff,

v.

I.T.O. CORPORATION OF BALTI-
MORE and Trism Specialized
Carriers, Inc., Defendants.

Civ No. H–00–1821.

United States District Court,
D. Maryland.

April 6, 2001.

James D. Skeen, Wright, Constable & Skeen, Baltimore, MD, for plaintiff.

Robert L. Ferguson, Jr., Ferguson, Schetelich, Heffernan, P.A., Baltimore, MD, Kip D. Richards, Kansas City, MO, for defendant Trism.

Jo Anne Zawitoski, and Semmes, Bowen & Semmes, Baltimore, MD, for defendant I.T.O. Corp. of Baltimore.

### MEMORANDUM AND ORDER

HARVEY, Senior District Judge.

In this civil action, plaintiff AIDA Dayton Technologies Corporation ("AIDA") has named as defendants I.T.O. Corporation of Baltimore ("I.T.O.") and Trism Specialized Carriers, Inc. ("Trism"). Plaintiff here seeks a recovery for damage to a machine press which on June 23, 1997 fell from a Trism tractor trailer as it traveled on Interstate 66 near Haymarket, Virginia.

In Count I of its complaint, plaintiff AIDA alleges that defendant I.T.O. negligently loaded and secured the machine press onto Trism's tractor trailer in Baltimore, Maryland. In Count II, plaintiff AIDA alleges that defendant Trism, contrary to its duties and obligations as a common carrier of merchandise for hire by land, breached its contract of carriage whereby it had agreed to deliver the machine press to the plaintiff in Ohio in the same condition as received. In each of these Counts, plaintiff claims to have sustained damages in the amount of $150,000.

Together with its answer to the complaint, defendant I.T.O. filed a cross-claim against defendant Trism, seeking indemnity and contribution as a result of I.T.O.'s potential liability to plaintiff AIDA for damage to the machine press. Pursuant to Scheduling Orders entered by the Court, the parties have engaged in discovery.

Presently pending before the Court is a motion for summary judgment filed by defendant Trism. Claiming that both AIDA's claim and I.T.O.'s cross-claim are barred by limitations, defendant Trism seeks the entry of summary judgment in its favor against both parties. The parties have submitted extensive memoranda and

numerous exhibits in support of and in opposition to the pending motion. No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons stated herein, the Court will deny Trism's motion for summary judgment both as to the claim of plaintiff AIDA and as to the cross-claim of co-defendant I.T.O.

## I

### Background Facts

AIDA is an Ohio corporation with its principal place of business in Dayton, Ohio. I.T.O. is a Maryland corporation engaged in the business of providing stevedoring and marine terminal services at the Port of Baltimore in Maryland. Trism is a corporation engaged in the common carriage of cargo by truck in interstate commerce, and it has a business office in Joplin, Missouri.[1]

In May of 1997, Roger Simon ("Simon"), a Trism customer service representative, provided three separate freight quotes to Debbie Cooke ("Cooke"), an AIDA shipping and delivery clerk. These quotes related to the transportation of machinery by Trism from the Port of Baltimore to Matsushita Appliance Corporation in Danville, Kentucky. The machinery in question was to be used for manufacturing automobile parts, and it included an AIDA two point gap frame press, Model No. NC2–160(2), and an AIDA leveller feeder, Model No. LFM–500R. The delivery would require the use of six separate tractor trailers because the machinery had a total weight of more than 95 tons.

On or about May 14, 1997, the machinery in question was shipped by Wilhelmsen Lines aboard the M/V TOBA from the Port of Yokohama, Japan to the Port of Baltimore. The shipment arrived in Baltimore on June 9, 1997. On June 23, 1997, defendant I.T.O. loaded one section of the machine press[2] onto a step-deck tractor trailer owned by defendant Trism and driven by its employee, John Geoghagan ("Geoghagan"). This particular piece was twelve feet long, approximately eight feet wide, almost nine feet high and weighed more than twenty tons. The unit had been placed in an upright position inside a wooden crate.[3] Geoghagan lashed the crate to the trailer by placing five nylon straps over the top of the crate, and he also placed wooden beams in the front and back of the crate to provide support. No bill of lading was issued by any party covering transportation of this particular piece of machinery from Baltimore to Danville, Kentucky.

At approximately 6:30 p.m. on June 23, 1997, Geoghagan was traveling west on Interstate 66 near Haymarket, Virginia when the machine press in question broke through the side of the crate as the tractor trailer started into a curve. Both the machine press and the crate fell from the side of the trailer, and the crate was demolished upon impact with the ground. The machine press itself tumbled down an embankment, coming to rest approximately 50 feet below the level of the road.

After being informed of this incident, AIDA requested that Trism transport the unit directly to AIDA's principal place of business in Dayton, Ohio. A crane was used to put the machine press back onto a Trism tractor trailer, and a Trism driver then delivered the cargo to Dayton. Upon

---

1. The record indicates that Trism's "home office" is located in Joplin, Missouri and its "corporate address" is located in Kennesaw, Georgia.

2. Documents of record refer to this individual item as a "NC2–160(2) machine press."

3. Although the machinery was originally packaged into six "cases," the record indicates that Trism transported a total of eight wooden crates, as follows: one wooden crate on each of four different trucks, and two wooden crates on each of two other trucks.

arrival on June 26, 1997, Cooke signed a non-negotiable straight bill of lading which had been prepared by Trism after the press machine had fallen from Trism's tractor trailer. The front of the bill of lading referred to certain tariffs maintained at Trism' s office in Georgia.

In correspondence dated September 4, 1997, Cooke informed Trism that the press had been damaged, and that AIDA was as a result holding Trism responsible for damages estimated as $243,020.89. On September 17, 1997, Darenda Rohrbach ("Rohrbach"), a cargo claims supervisor for Trism, responded in a letter which stated that Trism "must deny your claim on the grounds that the cargo was not properly secured inside the enclosed crate." On January 12, 1998, Gibson & Robb LLP, a law firm representing "the cargo interests," sent a letter with various attachments to Trism, indicating that the "value of the cargo (a total loss) is $119,596.18, and it is feared that the added expenses associated with the loss could total $80,403.82." In a follow-up letter dated September 9, 1998, Gibson & Robb explained that the claim for the damaged press had been "itemized" and "finalized" in the amount of "$148,138.51."

In an October 14, 1998 letter to Gibson & Robb, Rohrbach reiterated that the "failure to have the press secured inside the crate was the direct and only cause for this incident," and as a consequence, Trism cannot "accept the responsibility for this loss." In correspondence dated July 10, 1999, Gibson & Robb encouraged Trism to engage in settlement discussions because "[f]ederal law makes the carrier liable ... for the load which it transports." Finally, on August 31, 1999, Walters Bender &

Strohbehn, another law firm, sent a letter to Gibson & Robb on behalf of Trism, in which the earlier denial of liability was repeated, based upon the fact that the "problem here was the way in which the machine was crated, not the way in which the sealed crate was positioned and secured to the trailer." In closing, the letter suggested that "if [AIDA] truly intend[s] to file a lawsuit against Trism, [AIDA] should do so without any further delay."

On June 16, 2000, AIDA filed this civil action in this Court, naming as defendants both I.T.O. and Trism.[4]

## II

### Applicable Principles of Law

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Phoenix Sav. & Loan, Inc. v. Aetna Cas. Co.*, 381 F.2d 245, 249 (4th Cir.1967), the Fourth Circuit Court of Appeals sum-

---

4. On September 16, 1999, Trism had filed a voluntary petition in bankruptcy seeking relief under 11 U.S.C. §§ 101, *et seq.* Pursuant to 11 U.S.C. § 362, an automatic stay became effective on that same date. On February 18, 2000, the Delaware Bankruptcy Court issued notice of the confirmation and effectiveness of Trism's Reorganization Plan and dissolved the automatic stay, effective February 15, 2000.

marized the principles applicable under Rule 56 as follows: "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* Hence, the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *See, e.a., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cram v. Sun Ins. Office, Ltd.,* 375 F.2d 670, 674 (4th Cir.1967).

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Barwick,* 736 F.2d at 958. This burden is met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985)).

The Carmack Amendment was enacted by Congress in 1906 as an amendment to the Interstate Commerce Act of 1887, and has since been recodified several times. "The United States Supreme Court has long interpreted the Carmack Amendment as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 704 (4th Cir.1993) (citing *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913)). With respect to the liability of motor carriers and

freight forwarders, the language of the Carmack Amendment is primarily codified at 49 U.S.C. § 14706, which states in pertinent part:

(a)(1) A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchpater I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill or lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States ... Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

With respect to the time period for filing a claim or a suit for the recovery of damages for loss or injury to property, § 14706(e)(1) of the Carmack Amendment states:

A carrier may not provide by rule, contract or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

In *Shao,* the Fourth Circuit held that the Carmack Amendment "contemplates that limitations periods are terms to be bargained over between shipper and carrier, so long as the minimum conditions of

§ 11707(e) are met."[5] *Shao*, 986 F.2d at 707–08. The Act "clearly anticipates statutes of limitations and legislatively approves any limitation period exceeding two years." *Id.* at 708 (citing *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 704 n. 4 (11th Cir.1986)). In *Shao,* the Fourth Circuit went on to state:

> Determining whether the appellant's claim under the Carmack Amendment, 49 U.S.C. § 11707, is contractually time-barred therefore requires examination of any bill of lading that may have been issued to Shao, as well as the documentation concerning the filing of his claim for damaged goods and the disallowal of that claim by the carrier.

*Id.*

## III

### *AIDA'S Claim Against Trism*

#### (a)

##### *Trism's Arguments*

■ According to Trism, it is the Carmack Amendment which provides the exclusive form of relief for the claims asserted by plaintiff AIDA. Trism argues that AIDA's suit should be barred as untimely because it was not filed within two years and one day from the date when Trism denied AIDA's claim.[6] It is contended that AIDA should be bound by the two year and one day time limitation because it formed a part of the contract between Trism and AIDA for the shipment of the cargo or at the very least because AIDA had notice that such a time limitation was applicable.

In advancing its limitations arguments, Trism relies on the bill of lading which was signed by Cooke *after* the damage to the

property had occurred. That bill of lading indicated that "the terms and conditions of this bill of lading are published in tariffs as are other important rules and procedures that may apply to this shipment, which are maintained at Carrier's office and will be made available upon request." Trism claims that it provided transportation services in June of 1997 pursuant to tariffs which were maintained at its office and which required that a claim for loss or damage should be filed within nine months after delivery of the property and that a suit brought against a carrier for loss or damage should be instituted within two years and one day from the day when notice in writing was given by the carrier to the claimant that the carrier had disallowed the claim. Trism contends that AIDA's lawsuit was untimely because it was instituted on June 16, 2000, more than two years and one day after September 17, 1997 when Trism denied AIDA's claim in a letter from Rohrbach to Cooke.

It is further argued that even if the Court finds that the bill of lading in question is inapplicable since it was prepared after the press machine was damaged, AIDA should still be held to be bound by the tariff's deadlines because AIDA is a shipper with knowledge or notice of Trism's tariffs and/or the concept of interstate carrier tariffs in general. Trism relies on *White v. United Van Lines, Inc.,* 758 F.Supp. 1240 (N.D.Ill.1991) and *State Farm Fire & Casualty Co. v. United Van Lines, Inc.,* 825 F.Supp. 896 (N.D.Cal. 1993) for the proposition that in the absence of a bill of lading a shipper is nonetheless chargeable with knowledge of a carrier's tariff provisions.

---

5. Section 11707(e) of the Carmack Amendment has been recodified at § 14706(e)(1).

6. Except in its response to one of AIDA's arguments, Trism has not here contended that

AIDA is barred from a recovery in this case because it did not file a claim within the 9 month period mentioned in § 14706(e)(1).

Responding to AIDA's contention that its suit was timely filed even if the two year and one day limitation provision applies to this shipment, Trism argues that the September 4, 1997 letter from Cooke to Trism clearly constituted a claim under applicable law. According to Trism, Rohrbach's response of September 17, 1997 qualified as a denial of AIDA's claim thereby triggering the tariff provision that suit be filed within two years and one day.

It is further contended that, if the September 4, 1997 correspondence is deemed to be an invalid written claim because AIDA overestimated the amount of damages, then the January 12, 1998 correspondence should also be deemed to be invalid for the same reason. Trism argues that, as a consequence, AIDA will then have failed to meet the nine month time limitation for filing a claim under the tariff, thereby precluding AIDA from meeting a condition precedent to recovery.

(b)

*AIDA'S Arguments*

AIDA does not contend in this case that the Carmack Amendment is not applicable to the dispute between the parties here.[7] AIDA asserts, however, that the Carmack Amendment does not itself contain a statute of limitations pertaining to the filing of a suit against a carrier, but rather merely restricts a carrier from creating by contract a period of time for filing suit against it which is less than two years. According to AIDA, Trism cannot prove that there was an enforceable agreement between Trism and AIDA which included terms and conditions requiring that suit be filed within two years and one day after the written denial of the claim. AIDA further maintains that it did not have actual or con-

structive knowledge of the limitations provision contained in Trism's tariffs.

AIDA points out that the bill of lading signed by Cooke on June 26, 1997 was not created until after the press machine had been damaged. AIDA argues that as a result, this bill of lading covered only the shipment of the damaged press machine from Virginia to Ohio and that it has no application to the shipment between Maryland and Kentucky during which the press was damaged. AIDA notes that no bill of lading has been produced by any party covering the shipment from Baltimore to Danville, Kentucky. According to AIDA, other facts of record relied upon by Trism do not contractually bind it to the two year and one day limitations period.

AIDA further argues that its suit would still be timely even if this Court were to find that the two year and one day limitation provision is applicable to the shipment in question. According to AIDA, the September 4, 1997 letter from Cooke to the Claims Department of Trism did not constitute a valid "claim," and therefore Trism's response to that letter did not constitute a denial of the claim which would trigger the running of a contractual statute of limitations. Relying on *General Elec. Co. v. Brown Transport Corp.*, 597 F.Supp. 1258 (E.D.Va.1984), AIDA asserts that this Court should adopt the view that strict compliance with claim filing requirements is mandated in a case like the one now before the Court. AIDA notes that if Trism's September 17, 1997 letter of denial is held to be ineffective, the statute of limitations relied upon by Trism would begin to run on October 14, 1998, which was the date when Trism sent its second

---

7. Both AIDA and Trism agree that provisions of the Carmack Amendment are applicable to the claim asserted by AIDA against Trism in Count II of the complaint. As one of its arguments, Trism contends that I.T.O. has no

standing under the Carmack Amendment to assert a cross-claim against it. That issue will be addressed in Part IV of this Memorandum and Order.

letter of denial. AIDA notes that the deadline for filing suit would then be October 15, 2000 and that it would not have been untimely for AIDA to have instituted this action on June 16, 2000.

### (c)

### Discussion

The complexity of the legal and factual circumstances surrounding the limitations issues arising in this case is underscored by the parties' extensive briefing of the issues. Defendant Trism has filed five separate memoranda (Paper Nos. 11, 14, 16, 21 and 23). Plaintiff AIDA has filed a memorandum in opposition to Trism's motion for summary judgment and a surreply memorandum (Paper Nos. 12 and 24). Defendant I.T.O. has filed two memoranda addressing Trism's request for summary judgment as to I.T.O.'s cross-claims (Paper Nos. 13 and 20).

In support of their positions, the parties have submitted various evidentiary materials. Included as a part of the record here are declarations of witnesses, deposition excerpts, answers to discovery requests and numerous exhibits.

Following its review of the parties' memoranda and the evidentiary materials furnished by them, this Court has concluded that defendant Trism is not entitled to summary judgment as to the claim asserted against it by plaintiff AIDA. Summary judgment is not available under Rule 56 if there are genuine disputes as to issues of material fact. It is well established that the facts and all reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing a motion for summary judgment. *Ross,* 759 F.2d at 364. The Fourth Circuit has indicated that summary judgment should not be granted if inquiry into the facts is desirable to clarify the application of the law. *See Podberesky v. Kirwan,* 38 F.3d

147, 156 (4th Cir.1994) quoting *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950); *see also Kirkpatrick v. Consolidated Underwriters,* 227 F.2d 228 (4th Cir.1955). In this particular case, Trism has not met its burden of showing the complete absence of any genuine issue of material fact. The Court therefore cannot conclude that Trism is entitled, on the record here, to judgment as a matter of law on the limitations issue in question. *See Barwick,* 736 F.2d at 958.

■ Some courts have concluded that under the Carmack Amendment a tariff filed by an interstate carrier constitutes the contract between the parties as a matter of law. *See e.g., Harrah v. Minnesota Min. & Mfg. Co.,* 809 F.Supp. 313, 317 (D.N.J.1992). The Fourth Circuit has not so held. Rather, as the Fourth Circuit held in *Shao,* the determination which must be made in a case of this sort arising under the Carmack Amendment is whether the carrier is "contractually time-barred ..." 986 F.2d at 708. Such a determination requires examination of any applicable bill of lading and all other facts, including the documentation concerning the filing and the disallowance of the shipper's claim. *Id.*

Here, there was no clearly identifiable contract between AIDA and Trism covering the shipment between Baltimore and Danville, Kentucky. No bill of lading covering that shipment had been issued. Count II of the complaint is based on the assertion that Trism breached the "contract of carriage" between the parties. It will be for the jury[8] in this case to determine the terms and conditions of that contract, including whether the later bill of lading signed by Cooke or the other circumstantial evidence relied upon by Trism resulted

---

8. Trism has filed a demand for a jury trial.

in an agreement between the parties which included a two-year limitations period.

■ As the Fourth Circuit noted in *World–Wide Rights Ltd. Partnership v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992), "[a] court faces a conceptually difficult task in deciding whether to grant summary judgment on matters of contract interpretation." If resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must be refused and the interpretation must be left to the trier of fact. *Id.*

■ Although there is circumstantial evidence to support the position taken by Trism, inferences derived from other facts of record lead this Court to conclude that, at this stage of the proceedings, the limitations issue cannot be conclusively determined in Trism's favor as a matter of law on this record. The cases relied upon by the parties are not uniform. At the very least, inquiry into the facts is necessary here for the Court to determine the proper application of the appropriate legal principles. *See Podberesky*, 38 F.3d at 156. In determining whether a shipper is bound by a statute of limitations provision in a tariff, some courts have analyzed a number of different factors, including: (1) prior dealings between the parties; (2) the identity of the party which drafted the contract and negotiated its terms; (3) the sophistication of the shipper; (4) whether the provision was specifically brought to the shipper's attention; and (5) whether the language of the provision was reproduced in the bill of lading. *Comsource Indep. Foodservice Companies, Inc. v. Union Pacific Railroad Co.*, 102 F.3d 438, 444 (9th Cir.1996). These are factual determinations which must be made here by the trier of fact. The Court in *Comsource* applied a "reasonable notice" test in determining the limitations issue. *Id.*

Another issue raised by the parties in this case is whether a proper written claim was filed by Trism on September 4, 1997. Regulations for processing a claim for damage to cargo transported in interstate commerce are set forth in 49 C.F.R. § 1005.1, *et seq.* According to the regulations, a carrier shall not voluntarily pay a claim unless a written claim is filed within the time period specified in the bill of lading. 49 C.F.R § 1005.2(a). At a minimum, the written claim must: "(1) Contain[ ] facts sufficient to identify the baggage or shipment (or shipments) of property; (2) assert[ ] liability for alleged loss, damage, injury, or delay, and (3) make[ ][a] claim for the payment of a specified or determinable amount of money." 49 C.F.R. § 1005.2(b). When the issue has been raised, a determination must be made as to exactly when a proper written claim has been made because the statute of limitations for bringing a lawsuit begins running from the date when the carrier gives a claimant written notice that the carrier has disallowed any part of the claim. *See, e.g.*, 49 U.S.C. § 14706(e)(1). If a valid claim has not been made, then the date of a carrier's denial of that claim cannot be determined, and in turn, the deadline for filing a suit cannot be established.

The Sixth, Seventh and Ninth Circuits have determined that "substantial" compliance with these requirements is sufficient to constitute a claim, while the First, Second, and Fifth Circuits have indicated that " 'strict' compliance may be necessary." *Compare Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 713 (6th Cir.1999); *Wisconsin Packing Co. v. Indiana Refrigerator Lines, Inc.*, 618 F.2d 441, 445–46 (7th Cir. 1980); *Insurance Co. of North America v. G.I. Trucking Co.*, 1 F.3d 903, 906 (9th Cir.1993); with *Nedlloyd Lines v. Harris Transport Co.*, 922 F.2d 905, 908–09 (1st Cir.1991); *Pathway Bellows, Inc. v. Blan-*

*chette,* 630 F.2d 900, 904 (2d Cir.1980); *Salzstein v. Bekins Van Lines, Inc.,* 993 F.2d 1187, 1190–91 (5th Cir.1993). To date, neither this Court nor the Fourth Circuit has directly addressed this issue. The jury in this case will be asked to determine whether under the circumstances here AIDA strictly complied or substantially complied with the applicable regulations. The Court will then be in a better position to determine which legal standard should be applied.[9]

For all these reasons, this Court concludes that, on the record before it, there are disputed questions of material fact in this case which prevent the Court from concluding as a matter of law that the claim of plaintiff AIDA against defendant Trism is barred by limitations. Accordingly, Trism's motion for summary judgment will be denied as to plaintiff's claim asserted in Count II of the complaint.

## IV

### *I.T.O.'s Cross–Claim Against Trism*

■ In its cross-claim brought against Trism, I.T.O. asserts that, if plaintiff was damaged as alleged in the complaint, such damage was substantially due to the primary and active fault, negligence or other wrongdoing of Trism. I.T.O. asks that a judgment of indemnity and a judgment for contribution be entered in its favor against Trism, together with costs and attorneys' fees.

In seeking summary judgment as to I.T.O.'s cross-claim, Trism contends that I.T.O. does not have standing to assert a claim against Trism under the Carmack Amendment. It is argued that I.T.O. does not have such standing because no bill of lading was issued when Trism took possession of the press machine and because I.T.O. was not a shipper, consignor, con-

signee or owner of the machine. Trism further argues that, if the Court holds that standing under the Carmack Amendment exists, I.T.O. is barred from any recovery because it did not, as mandated by Trism's tariffs, file a written claim with Trism within nine months of the date of the damage to the press machine.

In response, I.T.O. contends that under the circumstances here it does indeed have standing to assert a cross-claim against co-defendant Trism. I.T.O. further argues that Trism cannot under the Carmack Amendment rely on the limitations provision of its tariffs because such tariffs were not incorporated in a valid bill of lading issued prior to the shipment of the press machine. Finally, it is asserted by I.T.O. that, even under the tariffs, its cross-claim was timely filed.

In *Harrah,* 809 F.Supp. at 319, the Court found that "possession of a bill of lading is not determinative of a plaintiff's rights or status under the Carmack Amendment...." (citing *Bowden v. Philadelphia, B & W.R.,* 28 Del. 146, 91 A. 209 (1914)). In *Bowden,* the court determined that standing under the Carmack Amendment extends to "one who, by some lawful transaction, has succeeded to the shipper's rights," and "failure to hold a bill of lading, upon proof of [a] right otherwise to recover," does not "defeat that right." *Id.,* 91 A. at 210. In *Universal Mfg. Corp. v. Associated Rigging & Hauling Corp.,* 773 F.Supp. 549 (E.D.N.Y.1991), a shipping broker who was not a party to the bill of lading was permitted to maintain under the Carmack Amendment a cross-claim against a carrier. The Court went on to determine that the broker had not complied with the nine-month notice of claim provision of the Carmack Amendment and

---

**9.** If the jury were to find that both of these compliance requirements have been met, it will not be necessary for the Court to decide the legal issue.

dismissed the claim on that ground. *Id.* at 551.

In *Taft Equipment Sales Co., v. Ace Transp., Inc.,* 851 F.Supp. 1208 (N.D.Ill. 1994), TEI, a truck broker, was permitted to bring a fourth-party action under the Carmack Amendment against Aero, a carrier, even though TEI did not notify Aero of its claim until more than two and half years after the cargo at issue was damaged. The Court found that Aero could not benefit from any nine-month notice of claim provision because no bill of lading existed between the parties. *Id.* at 1212–13. Furthermore, by allowing TEI's claim to go forward, the Court implicitly found TEI to have standing even though TEI claimed to be "merely . . . a truck broker" which did not act as a carrier, shipper, consignee, consignor, or owner of the cargo in question. *Id.* at 1211.

In this case, AIDA is seeking a recovery as the owner, consignee and purchaser of the press machine. Wilhelmsen Lines had been engaged to transport the press machine from Japan to Baltimore, pursuant to an ocean bill of lading which listed AIDA as the consignee. In turn, Wilhelmsen Lines made arrangements with I.T.O. for it to unload the machinery and transport the press machine from Wilhelmsen's ship to Trism's tractor trailer. Upon receipt of the cargo, I.T.O. was an agent of Wilhelmsen Lines which had succeeded to the shipper's rights in the press machine. Under these circumstances, the Court is satisfied that I.T.O. has presented evidence of a "right to recover" against Trism under the Carmack Amendment. *See Bowden,* 91 A. at 210. Accordingly, the Court concludes that I.T.O. has standing to maintain in this case a cross-claim against Trism.

■ Moreover, on the record here, this Court concludes that the Carmack Amendment does indeed apply to indemnity and contribution claims like those as-

serted by I.T.O. here. Any claim against a carrier involving an interstate shipment of merchandise is subject to the provisions of the Carmack Amendment. *Urban Electrical Company, Inc. v. Cable Index,* 735 F.Supp. 29, 32 (D.Mass.1990). Claims of negligence and indemnity are like other claims for loss or damage to goods included within the broad subject matter which the Carmack Amendment was intended to cover. *Id.* at 31.

■ However, there is no merit to Trism's argument that I.T.O.'s cross-claim is barred by limitations. I.T.O.'s cross-claim does not even accrue until its liability for damages is determined by judgment or payment. In *Atlantic Mutual Companies v. Orient Overseas Container Line,* 1992 WL 226953 (W.D.Wash. March 26, 1992), the Court held that an action brought under the Carmack Amendment for indemnification accrues at the time of the indemnitee's payment, despite a shorter contractual limitations period applying to claims between the parties. *Id.* at *4 (citing *States S.S. Co. v. American Smelting & Refining Co.,* 339 F.2d 66, 70 (9th Cir.1964) and *Hercules, Inc. v. Stevens Shipping Co.,* 698 F.2d 726, 735 (5th Cir. 1983)). I.T.O. first learned of plaintiff's claim against it when this civil action was filed. Its cross-claim, which was filed on September 7, 2000, is clearly timely, since it was filed less than three months after the date when I.T.O. first received notice of damage to the press machine at issue.

For these reasons, this Court concludes that defendant Trism is not entitled to summary judgment as to the cross-claim asserted against it in this case by defendant I.T.O.

## V

### *Conclusion*

For all the reasons stated, it is this 6 day of April, 2001 by the United States

District Court for the District of Maryland,

ORDERED:

1. That the motion for summary judgment of defendant Trism Specialized Carriers, Inc. is hereby denied as to the claim brought against it in this case by plaintiff AIDA Dayton Technologies Corporation; and

2. That the motion for summary judgment of defendant Trism Specialized Carriers, Inc. is hereby denied as to the cross-claim brought against it by defendant I.T.O. Corporation of Baltimore.