**AIDA DAYTON TECHNOLOGIES CORPORATION Plaintiff**

v.

**TRISM SPECIALIZED CARRIERS, INC. Defendant**

No. H–00–1821.

United States District Court, D. Maryland.

Dec. 19, 2001.

James D. Skeen, Wright Constable and Skeen LLP, Baltimore, MD, for Plaintiff.

Jo Anne Zawitoski, Alexander M. Giles, Semmes Bowen and Semmes PC, Robert L. Ferguson, Jr., Ferguson Schetelich and Heffernan PA, Baltimore, MD, Kip D. Richards, Law Office, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

This civil action was instituted in this Court by plaintiff AIDA Dayton Technologies Corporation ("AIDA") on June 16, 2000. The defendants named in the complaint are I.T.O. Corporation of Baltimore ("I.T.O.") and Trism Specialized Carriers, Inc. ("Trism"). Plaintiff is here seeking a recovery for damage to a machine press which on June 23, 1997 fell from a Trism tractor trailer as it traveled on Interstate 66 near Haymarket, Virginia.

By agreement of the parties, defendant Trism was permitted at an early stage of the case to file a motion for summary judgment based on a stipulation of facts and certain limited discovery. That motion presented Trism's contention that both AIDA's claim and I.T.O.'s cross-claim were barred by limitations. After Trism's motion for summary judgment had been fully briefed by the parties, it was denied without a hearing by way of the Court's Memorandum and Order of April 6, 2001. *AIDA Dayton Techs. Corp. v. I.T.O. Corp. of Baltimore,* 137 F.Supp.2d 637 (D.Md. 2001).

Further discovery was then undertaken by the parties, and at counsel's request a date was set for the filing of further dispositive motions.[1] Presently pending are a motion for partial summary judgment filed by plaintiff AIDA and a renewed motion for summary judgment filed by defendant Trism. Memoranda and exhibits in support of and in opposition to these motions have been submitted by the parties. A hearing has been held in open court.

For the reasons stated herein, both AIDA's motion for partial summary judgment and Trism's motion for summary judgment will be denied.

I

### Background Facts and Applicable Principles of Law

The background facts and the applicable principles of law were discussed at some length in the Court's earlier ruling. *See AIDA Dayton,* 137 F.Supp.2d at 639–42. They will not be repeated here. As it did earlier, the Court must now determine whether there exist in this case genuine issues of material fact as to the critical limitations issue raised by defendant Trism. *Id.* at 640. Plaintiff AIDA contends that it is entitled to partial summary judgment on this issue while defendant Trism argues that summary judgment as a matter of law should be entered in its favor.

At issue here is whether plaintiff AIDA is barred by applicable limitations provisions from asserting its claim in this case against defendant Trism. As previously noted, with respect to the time period for filing a suit for the recovery of damages for loss or injury to property, § 14706(e)(1)

---

1. By stipulation, defendant I.T.O. has now been dismissed as a defendant in the case.

of the Carmack Amendment provides as follows:

A carrier may not provide by rule, contract or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

Defendant Trism contends that an applicable tariff provision contained in its uniform bills of lading bars this suit. The tariff provision in question requires a shipper to file suit against Trism as the carrier within two years and one day after written notice of the denial of the shipper's claim. According to Trism, AIDA's lawsuit was untimely because it was instituted on June 16, 2000 which was more than two years and one day after September 17, 1997, when Trism contends that it denied AIDA's claim.

In *Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700 (4th Cir.1993), the Fourth Circuit addressed the question of the reach of limitations periods permitted by the Carmack Amendment. The Court there held that the Carmack Amendment "contemplates that limitations periods are terms to be bargained over between shipper and carrier, so long as the minimum conditions of § 11707(e) are met." [2] *Shao,* 986 F.2d at 707–08. The Act "clearly anticipates statutes of limitations and legislatively approves any limitation period exceeding two years." *Id.* at 708 (citing *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 704 n. 4 (11th

Cir.1986), *cert denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987)). In *Shao,* the Fourth Circuit went on to state:

Determining whether the appellant's claim under the Carmack Amendment, 49 U.S.C. § 11707, is contractually time-barred therefore requires examination of any bill of lading that may have been issued to Shao, as well as the documentation concerning the filing of his claim for damaged goods and the disallowal of that claim by the carrier. *Id.*

In determining whether a shipper is bound by a statute of limitations provision in a tariff, some courts have analyzed a number of different factors, including: (1) prior dealings between the parties; (2) the identity of the party which drafted the contract and negotiated its terms; (3) the sophistication of the shipper; (4) whether the provision was specifically brought to the shipper's attention; and (5) whether the language of the provision was reproduced in the bill of lading. *Comsource Indep. Foodservice Cos., Inc. v. Union Pac. R.R. Co.,* 102 F.3d 438, 444 (9th Cir. 1996), *cert. denied,* 520 U.S. 1229, 117 S.Ct. 1821, 137 L.Ed.2d 1029 (1997).

II

*The Parties' Arguments*

The parties here repeat and enlarge on the arguments advanced in support of and in opposition to Trism's earlier motion for summary judgment. *See AIDA Dayton,* 137 F.Supp.2d at 642–44. Trism argues that on the record here, including additional facts which have been developed by discovery since the Court's earlier ruling, AIDA's suit should be barred as untimely.[3] According to Trism, summary judgment is

---

2. Section 11707(e) of the Carmack Amendment has been recodified at § 14706(e)(1).

3. The parties have filed a Stipulation of Facts which sets forth facts as to which there is no dispute. Attached to that Stipulation are 19 exhibits.

**508**

appropriate because no reasonable jury could determine as a matter of law that AIDA was not barred by limitations. Plaintiff AIDA in turn has moved for partial summary judgment and has asked this Court to determine as a matter of law that the two year and one day time provision at issue was not a part of the bargain between the parties and that, even if it was contractually time-barred by Trism's tariff, AIDA fully complied with the limitations provisions in question.

Trism argues that as a result of discovery undertaken since the Court's earlier ruling, additional facts have been established which entitle it to judgment as a matter of law. Trism contends that the facts of record here indicate that Trism did in fact provide AIDA with written freight quotes for the shipment, that these freight quotes covered what was essentially a single shipment even though there were six separate loads, that the freight quotes specifically referred to Trism's tariffs which Trism agreed to make available upon request, and that AIDA accepted the quotes reflecting the terms and conditions under which Trism would transport the shipment, including the limitations provisions at issue. It is further argued that AIDA was familiar with the type of form of the bill of lading which Trism used for these shipments, that Trism did issue two bills of lading for the four shipments in question, that after the accident, AIDA received a bill of lading for the damaged press which incorporated the tariff, and that AIDA was a sophisticated shipper which was aware of the time limitations at issue in this case.

In response, AIDA contends that prior to the accident it had received from Trism no bill of lading or other documentation relating to the damaged machine press in question except the freight quotes. According to AIDA, the freight quotes accepted by it did not contractually bind it to

the limitations provisions contained in Trism's tariff. AIDA notes that there was nothing in the freight quotes which stated that every shipment carried by Trism was subject to all the terms and conditions of the tariff and that furthermore there was nothing in the freight quotes which indicated that AIDA was aware of and was bound by the terms of the tariff when it delivered the goods to Trism. Although acknowledging that it had received other bills of lading before other shipments were made at the same time, AIDA asserts that it did not receive any Trism bill of lading covering the damaged machine press until *after* the damage had occurred. AIDA maintains that all of the documents cannot be read together as a part of a binding contract because each bill of lading which was issued stated that it covered only the cargo referenced in that particular bill of lading and because each bill of lading referred only to the particular piece of equipment included in the individual shipment.

In the alternative, AIDA argues that even if it was contractually time-barred by provisions of Trism's tariff, it fully complied with those requirements. According to AIDA, the September 4, 1997 letter sent by one of its representatives to Trism did not constitute a valid "claim," and therefore Trism's response to that letter did not constitute a denial of the claim which would trigger the running of the limitations period. AIDA maintains that only its January 12, 1998 letter constituted a valid claim under applicable regulations and that therefore the two year and one day limitations period did not begin to run until October 14, 1998, which is the date when the claim made on January 12, 1998 was denied by Trism.

### III

*Discussion*

■ The pending motions present essentially a question of contract interpreta-

tion. Under *Shao*, the determination which must be made in this case is whether AIDA is "contractually time-barred..." from asserting a claim against defendant Trism. *See* 986 F.2d at 708. This determination requires examination of any applicable bill of lading and all other facts, including the documentation concerning the filing and disallowance of the shipper's claim. *Id.* There was no written contract between the parties whereby AIDA agreed to be bound by the limitations period contained in Trism's tariffs. Trism argues that facts of record here establish as a matter of law that the shipping contract between the parties included Trism's tariff provisions. However, as the Court stated in its Memorandum and Order of April 6, 2001, summary judgment is seldom appropriate when a court is required to resort to circumstantial evidence of record in its interpretation of a contract. *AIDA Dayton*, 137 F.Supp.2d at 645. When a motion for summary judgment is based on the parties' interpretation of an alleged contract between them, the Fourth Circuit has held as follows in *World–Wide Rights Ltd. Partnership v. Combe, Inc.*, 955 F.2d 242 (4th Cir.1992):

> [o]nly an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible of two reasonable interpretations." [Citation omitted]. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis. [Citation omitted]. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

*Id.* at 245.

(a)

### Limitation on Time to File Suit

■ Counsel's strenuous efforts to persuade the Court that the critical limitations issue in this case can be decided before trial as a matter of law must fail. The more determined are the arguments and the more additional evidence is brought to the Court's attention, the more it becomes apparent that the issue presented is not one which can be decided as a matter of law under Rule 56. After reviewing the additional evidentiary materials which have been supplied, the Court has once again concluded that defendant Trism is not entitled to summary judgment on the ground that the claim asserted against it by plaintiff AIDA is as a matter of law barred by the two year and one day limitations provision contained in Trism's tariffs. Furthermore, since disputes of material fact exist, plaintiff AIDA is not entitled to partial summary judgment in its favor on the limitations question at issue here.

■ Although there is circumstantial evidence to support the positions taken both by plaintiff AIDA and by defendant Trism, inferences to be drawn from facts

of record must be viewed in the light most favorable to the party opposing a motion for summary judgment. *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). What must be determined here is the intent of the parties. But summary judgment is seldom appropriate in cases in which particular states of mind are decisive as elements of a claim or defense. *Ballinger,* 815 F.2d at 1005.

It is quite apparent that ambiguities exist concerning the terms of the contract between the parties whereby Trism agreed to ship the machine press in question from Baltimore to Danville, Kentucky. Resort must therefore be had to extrinsic evidence to determine whether AIDA agreed that any suit brought against Trism for damage to this machine press had to be filed within two years and one day after AIDA received written notice of the denial of its claim.

Defendant Trism relies on various facts of record in support of its contention that the parties understood and agreed that the contract between them included the terms and conditions of Trism's tariffs. First, it is argued that there was in effect but a single shipment here which was comprised of six separate loads and that the terms and conditions set forth in the bills of lading which were in fact issued for four of the loads were likewise controlling insofar as the shipment of the damaged machinery was concerned. Particular reliance is placed on the freight quotes which refer to Trism's tariffs. Next, Trism points out that a bill of lading was issued by it and was signed by Debbie Cooke ("Cooke")[4] after the damage to the property had oc-

curred but before any claim was made by AIDA. That bill of lading did incorporate the Trism tariff which contained the limitations provisions in question. Finally, Trism argues that AIDA was a sophisticated shipper which had constructive knowledge of the existence of tariffs like the one claimed by Trism to bar AIDA's suit in this case.

However, these facts are not conclusive on the record here. There are other inferences which the trier of fact would be entitled to derive from facts of record and which would support a finding that no binding contract was reached between the parties. Trism issued four separate bills of lading for four of the six separate loads of crated machinery. Each of these documents specifically referred to the item of machinery shipped, and each expressly stated that the shipment was subject to "tariffs which are incorporated herein..." If, as Trism argues, only a single shipment was in effect involved here, it would presumably have not been necessary for the issuance of four separate bills of lading.

Trism's reliance on the freight quotes is also not conclusive. Unlike the language in the bills of lading which "incorporated" the tariffs, the freight quotes merely state: "Carriers' tariffs are on file at its Pricing & Traffic office in Kennesaw, Georgia and shall be made available upon request." In comparing language in the bills of lading with language in the freight quotes, the trier of fact might reasonably infer that AIDA was contractually bound by what appeared in the bills of lading for four of the six separate loads but not by the language contained in the freight quotes for the other two loads.

---

4. As noted in this Court's earlier ruling, Cooke was AIDA's shipping and delivery clerk who signed the bill of lading prepared by Trism after the property damage had oc-

curred and who wrote the letter of September 4, 1997 asserting AIDA's claim against Trism.

*AIDA Dayton,* 137 F.Supp.2d at 639–40.

Furthermore, there is evidence of record indicating that AIDA was not a sophisticated shipper which had previously had extensive prior dealings with Trism. Although AIDA's parent is a large foreign company with a high volume of sales, AIDA was merely this company's United States affiliate and was only two years old at the time of this loss. Cooke had been working for AIDA's Traffic Department for merely a short period of time before the loss and testified that she had no knowledge of the limitations provisions of Trism's tariffs or of general standards in the trucking industry with respect to the time within which a suit against a carrier had to be filed.

Each party contends that consideration of the *Comsource* factors on the record here must lead to the granting of its summary judgment motion. The Court must disagree. There are competing inferences arising from facts of record which prevent this Court from concluding as a matter of law under *Comsource* that AIDA was or was not contractually bound by the limitations provision at issue.

Trism's reliance on *State Farm Fire & Cas. v. United Van Lines,* 825 F.Supp. 896 (N.D.Cal.1993) and *White v. United Van Lines, Inc.,* 758 F.Supp. 1240 (N.D.Ill. 1991) is misplaced. In *State Farm,* the Court held that absent a contract a shipper would be bound by tariff limitations in a bill of lading if it was provided with a copy of the bill of lading or was otherwise put on notice of its terms. *Id.* at 901. In *White,* the Court held that the shipper was bound by a two year and one day provision even though she had no actual knowledge of the provision when the contract was formed. *Id.* at 1242. Relying on those cases, Trism contends that AIDA is bound by the limitations provisions in question because it had actual or constructive knowledge of the tariffs themselves. However, Fourth Circuit law requires more than mere knowledge and notice if a shipper is to be bound by a tariff provision. Under *Shao,* a determination must be made that the shipper's claim is "contractually time-barred."

Circuit Judge Niemeyer was the author of the *Shao* opinion. Earlier, as a District Judge, he reached a somewhat similar conclusion in *Acro Automation Sys., Inc. v. Iscont Shipping Ltd.,* 706 F.Supp. 413 (D.Md.1989). In that case, the Court was called upon to decide whether, under the Carmack Amendment, a carrier had limited its liability for damage to equipment transported by it. The carrier's limited liability argument was based on a bill of lading signed by the shipper. However, that bill of lading had been presented to and signed by the shipper upon delivery of the shipment but not in advance. In his ruling, Judge Niemeyer granted partial summary judgment in favor of the shipper on the ground that the claimed limitation of liability was not available in the case. He concluded that, to limit its liability in a case of this sort, the carrier must, *inter alia,* give the shipper a reasonable opportunity to choose between two or more levels of liability, obtain the shipper's agreement as to his choice of liability, and "issue a bill of lading *prior to* moving the shipment that reflects the agreement." (Emphasis added). *Id.* at 415. The mere fact that the defendants had a tariff on file limiting liability was not sufficient. *Id.* at 418. Rather, as Judge Niemeyer held, in order to establish limited liability, the carrier must show not only that a tariff is on file, "but that a choice was given to the shipper" and that "a deliberate and well-informed choice was made . . ." *Id.* at 419.

On this record, the conflicting inferences cannot be decided as a matter of law either in favor of plaintiff AIDA or in favor of defendant Trism. It will be for the jury to determine, after considering the facts and all reasonable inferences to be derived

therefrom, whether there existed between the parties an implied contract which included the requirement that AIDA's suit against Trism had to be filed two years and one day after Trism had given written notice of disallowance of the claim.

(b)

### The Date When the Limitations Period Began to Run

■ In support of its motion for partial summary judgment, AIDA has argued in the alternative that even if it was contractually time-barred by applicable tariff provisions, it fully complied with the requirement that it was required to file suit against Trism within two years and one day after written notice from Trism of the denial of AIDA's claim. AIDA maintains that its September 4, 1997 letter did not under applicable law constitute a valid "claim." According to AIDA, the January 12, 1998 letter constituted its valid claim, and the limitations period did not begin to run until October 14, 1998 when the claim made on January 12, 1998 was denied by Trism.

The question presented is whether AIDA's September 4, 1997 letter complied with regulations for processing a claim for damaged cargo transported in interstate commerce, as set forth in 49 C.F.R. § 1005.1, *et seq.* As noted in the Court's prior ruling, some circuits have required that there be "substantial" compliance with these requirements, while others have indicated that "strict" compliance is necessary. *See AIDA Dayton,* 137 F.Supp.2d at 645–6; compare, *Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 713 (6th Cir.1999) with *Nedlloyd Lines v. Harris Transp. Co.,* 922 F.2d 905, 908–09 (1st Cir.1991). The Fourth Circuit has not as yet addressed this issue.

Before the Court decides whether a "substantial" compliance standard or a "strict" compliance standard should be applied by courts in the Fourth Circuit, in-

quiry into the facts at the trial is necessary for a determination of the appropriate legal principles to be applied. *Podberesky v. Kirwan,* 38 F.3d 147, 156 (4th Cir.1994), *cert. denied,* 514 U.S. 1128, 115 S.Ct. 2001, 131 L.Ed.2d 1002 (1995). Whether or not AIDA's letter of September 4, 1997 constituted a valid claim under I.C.C. regulations cannot on the record here be determined as a matter of law at this stage of the case.

■ If merely substantial compliance is necessary, the letter of September 4, 1997 would appear to be a valid claim. Under that standard, a reasonably accurate indication of the value of the claim is sufficient. *Trepel,* 194 F.3d at 713. If strict compliance is necessary, a determination must be made as to whether a more accurate figure than the estimate was supplied by AIDA within a reasonable time. In this regard, a decision of the Eastern District of Virginia is instructive. In *General Electric Co. v. Brown Transp. Corp.,* 597 F.Supp. 1258 (E.D.Va.1984), the Court was faced, *inter alia,* with the issue of whether the shippers' written notice which failed to claim a specified or determinable amount of damages was sufficient to constitute a valid claim. The letter in that case did not claim a sufficient or ascertainable amount of damages. Rather, it merely stated that the information would be provided at a later date. The Court adopted the following rule:

> Under the applicable I.C.C. regulations, a shipper is required to file a written notice containing a claim for a specified or determinable amount of money. If information concerning the amount of damages is not immediately available, it must be communicated in writing within a reasonable time after the shipper reasonably gains such knowledge. *Id.* at 1267.

Applying that rule, the Court held that the shipper had not complied with the

applicable regulations because it waited for more than two months after receiving knowledge of the actual amount of damages before sending the information to the carrier. *Id.*

In its letter of September 4, 1997, AIDA estimated freight, labor and other damages to be $243,020.89. Subsequently, the letter of January 12, 1998 estimated total damages to be in the amount of $200,000. Later, in the letter of September 9, 1998, AIDA informed Trism that the claim had been finalized at a figure of $148,138.51.

Under *General Electric Co.*, AIDA's failure to include in its written notice a claim for a specified determinable amount of money would be excused if AIDA did not know the specific amount of the claim at the time that the letter was written. Presumably, information concerning the amount of damages claimed was not immediately available when the September letter was written. On the record here, it cannot be determined whether the more precise figures were communicated to Trism within a reasonable time after AIDA had gained such knowledge. Accordingly, even if it were to apply a strict standard, the Court cannot determine as a matter of law on the record now before it whether the claim filed by AIDA on September 4, 1997 constituted a proper claim under the applicable regulations.[5]

IV

*Conclusion*

For all these reasons, this Court concludes that there are disputes of material fact which prevent the Court from entering summary judgment on the limitations issues presented either in favor of plaintiff AIDA or in favor of defendant Trism. Accordingly, it is this _____ day of December, 2001 by the United States District Court for the District of Maryland,

ORDERED:

1.  That the motion for partial summary judgment of plaintiff AIDA Dayton Technologies Corporation is hereby denied; and

2.  That the motion for summary judgment of defendant Trism Specialized Carriers, Inc. is hereby denied.

---

5. Trism has argued in the alternative that if AIDA's September 4, 1997 letter was not a valid claim, then its letter of January 12, 1998 was also not a valid claim because it likewise merely estimated the damages sought. According to Trism, the nine month requirement for filing a claim would not have been satisfied if the letter of September 9, 1999 constituted the claim required by the applicable regulations. Since the Court has not determined at this stage of the case whether a substantial compliance standard or a strict compliance standard must be applied, it is not necessary to address this alternative argument of Trism.